# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

FREDERICK L. BRITTAIN,

        Plaintiff,

v.                                      Case No. 3:20-cv-92-TJC-PDB

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES,
AFL-CIO,

        Defendant.

_____

# O R D E R

The Court must decide whether a long-serving labor union officer was afforded adequate due process in an internal union disciplinary proceeding. This case comes before the Court on Defendant American Federation of Government Employees, AFL-CIO's ("AFGE") motion for summary judgment (Doc. 44), to which Plaintiff Frederick L. Brittain responded (Doc. 47).[1] AFGE also filed a reply (Doc. 50). The motion for summary judgment pertains exclusively to Count I of Brittain's complaint (Doc. 1), as the Court's January 13, 2021 Order (Doc. 42) dismissed Counts II, III, and IV. Count I alleges that AFGE violated the Labor-Management Reporting and Disclosure Act

_____

[1] Brittain's response to AFGE's motion for summary judgment is referred to as "Response" throughout this Order.

("LMRDA"), 29 U.S.C. § 411(a)(5), by disciplining Brittain without providing him due process.

## I.    FACTS

### A.    AFGE Local 1976, AFGE Local 2779, and Brittain

AFGE is a national labor organization that represents federal government and private sector employees. Doc. 1 ¶ 8. AFGE's National Constitution governs union affairs. Doc. 44-7 ¶ 8. The National Constitution and AFGE policies distinguish between bargaining unit employees and management officials. For example, while bargaining unit employees are entitled to representation, a supervisor "may not . . . receive personal representation in administrative or judicial proceedings from a local, district, council or AFGE" under AFGE's Policy on Supervisors and Management Officials Who Retain Membership in AFGE Locals. Doc. 44-4 at 45–47, 76.

AFGE has local chapters around the United States. Locals' constitutions or bylaws set out the terms and conditions of local membership. See Docs. 44-6 at 59; 44-4 at 34; see also Docs. 44-2 at 12–15. AFGE Local 1976 represents bargaining unit employees at North Florida/South Georgia Veterans Health System in Lake City, Florida ("Lake City VA"). See Doc. 44-2 at 11; February 14, 2014 Letter from National President Cox, Doc. 44-6 at 81 ("Local 1976 only has authority to represent bargaining unit employees at Lake City and Tallahassee, Florida, and Valdosta and Waycross, Georgia."). Frederick L.

2

Brittain was a member of Local 1976 from 1996 to 2017 and president of the local from 2001 until 2016. See Doc. 44-2 at 7. At all relevant times, Brittain was a federal employee employed by Lake City VA. Docs. 1 ¶ 17; 44-2 at 5.

AFGE Local 2779 represents bargaining unit employees at Lake City VA's sister facility, Florida/South Georgia Veterans Health System in Gainesville, Florida ("Gainesville VA"). See Doc. 44-2 at 23. Muriel Newman, a Gainesville VA bargaining unit employee, was president of Local 2779 at all relevant times. Docs. 44-3 at 110; 44-2 at 30. Newman had a hostile relationship with Brittain, and filed multiple internal AFGE complaints against Brittain during his tenure as President of Local 1976. See Docs. 44-2 at 32, 52, 156–57.

Glenda Skinner, a laboratory supervisor at Gainesville VA, reported to and worked under the same management official as Newman. See id. at 26, 38. Although Gainesville VA falls under the jurisdiction of AFGE Local 2779, Skinner paid dues to AFGE Local 1976 until approximately August 29, 2016, at which time she was informed that she was not eligible to be a Local 1976 member. See id. at 46; 44-6 at 91.

At an unspecified time before April 18, 2016, Brittain agreed to represent Skinner in an Equal Employment Opportunity Complaint ("EEO Complaint") against the Department of Veterans Affairs. Doc. 44-2 at 25, 27–28, 148, 150. Brittain's representation of Skinner was not his first representation of a management official. During his tenure as president, Brittain, in his personal

capacity, represented approximately six management officials in a variety disputes (e.g., EEO complaints and pay disputes) against the Department of Veteran Affairs. See id. at 17–18. In contrast to Skinner's EEO Complaint, in which she alleged Newman was creating a hostile working environment, see id. at 31–32, 50–51, 150–53, most of Brittain's representations of management officials did not involve allegations against bargaining unit employees, see id. at 18. Furthermore, it is unclear whether the national AFGE leadership knew of Brittain's past representations of management officials. Id. at 19–22.

On June 17, 2016, in his capacity as Skinner's representative, Brittain emailed the Director of the Florida/South Georgia VA System (the "VA Director"), and other members of hospital management, reporting that Denys Krol, a Gainesville VA bargaining unit employee member of AFGE Local 2779, was improperly accessing a Gainesville VA laboratory. See Doc. 44-2 at 42–43, 158–60; see also id. at 24. In the email, Brittain also requested that management investigate the matter and revoke Krol's access to the laboratory. Doc. 44-2 at 160. Brittain sent a separate email on June 17, 2016 to the VA Director and other management officials to notify them of Newman's use of explicit language on government computers. See Doc. 44-2 at 157.[2]

---

[2] Brittain filed a related internal union complaint against Newman on August 15, 2016. See Doc. 44-3 at 103. Local 2779 did not find probable cause to charge Newman. See id. at 109.

Following these events, Brittain received a letter from AFGE National President J. David Cox dated July 22, 2016, specifying that Brittain's representation of Skinner, receipt of dues from Skinner, and sending of the June 17 emails to management constituted chargeable offenses under the National Constitution.[3] See Doc. 44-2 at 45–48, 161–62. The letter also suspended Brittain from the office of President of AFGE Local 1976. Doc. 44-2 at 106, 161. In September 2016, Cox suspended Brittain as a delegate to an AFGE national convention. Docs. 1 ¶ 21; 44-6 at 15. Later, Brittain received a notice of hearing dated December 22, 2016 from Cox, stating that "an independent trial committee will conduct a hearing . . . on January 10th" at a specified time and place (the "Hearing"). Doc. 44-2 at 54, 163. Following receipt of the notice, Brittain selected Bryan R. Hardison to represent him in the disciplinary proceeding. Docs. 44-2 at 55; 44-6 at 108.

Cox represented to Brittain that settlement of the charges was an option, if, at a minimum, Brittain resigned from being President of Local 1976. See Doc. 44-3 at 100. Brittain responded that he would not resign. See id. at 102.

---

[3] Cox had previously pursued unrelated charges against Brittain. See Doc. 47-1 ¶19.

## B.　　　Brittain's Disciplinary Proceedings[4]

The National Constitution sets forth multiple processes for bringing and processing charges against union members. See, e.g., National Constitution, art. XXIII; see also Docs. 44-7 ¶ 9; 44-4 at 21. In Brittain's case, Cox preferred the charges against Brittain and appointed a three-member Trial Committee to determine Brittain's guilt. Docs. 44-2 at 98–99, 101; 44-4 at 71–72; 44-7 ¶ 12. The Trial Committee consisted of Jeanette McElhaney, Lino Penas, and Horace Cooper. Docs. 44-2 at 59; 44-6 ¶¶ 3–4. The Trial Committee first learned of the charges against Brittain on January 5, 2017. Doc. 44-6 ¶ 8. Brittain did not know or have any interactions with Penas or Cooper before the Hearing. Docs. 44-2 at 59; 44-6 ¶ 9. However, Brittain was familiar with McElhaney because he had filed a protest to invalidate an election in which McElhaney was a candidate. See infra Part I.C.; Doc. 44-2 at 59. Brittain and McElhaney also attended the same conventions, conferences, and national union events. Doc. 44-4 at 5. Brittain believes that McElhaney was biased against him due to the election protest, see infra at 8, and requested that McElhaney be removed from the Trial Committee. See Doc. 1 ¶ 23. This request was denied. Id.

---

[4] Neither party filed a transcript of the Hearing. Apparently, there is an audio tape of the Hearing, but that was not provided either. While the lack of a transcript here is not outcome determinative, failing to provide a transcript impedes the Court's review, and, in some cases, may raise due process concerns.

At the Hearing, the Trial Committee admitted evidence and permitted witnesses as long as there were no party objections, <u>see</u> Doc. 44-4 at 56, and as long as the proposed witnesses were not management officials—AFGE practice was to exclude management officials from disciplinary proceedings, Docs. 44-6 ¶¶ 18–19; 44-4 at 54. When a party raised objections, the Trial Committee listened to the views of the parties, and then proceeded to decide whether to admit the evidence at issue. <u>See</u> Docs. 44-4 at 54, 56; 44-2 at 82–84.

AFGE objected to almost all the witnesses and evidence Brittain tried to introduce. Doc. 44-2 at 66. The Trial Committee allowed Brittain and Brittain's witness Robert Van Slyke, Newman's predecessor as president of Local 2779, to testify. Docs. 44-2 at 66, 75; 44-6 ¶¶ 14, 17; <u>see also</u> Doc. 47-1 ¶ 23. However, the committee did not allow Mary Devlin, former secretary-treasurer of Local 2779, or Skinner to testify on Brittain's behalf. Doc. 47-1 ¶¶ 23, 29–30. The parties dispute whether Brittain attempted to call Cox as a witness. <u>See</u> Docs. 47-1 ¶ 26; 44-6 ¶ 16; 44-4 at 43–44, 53–54.

AFGE called Newman, Mary Pararo, and Bill Kudrie as witnesses, and Brittain's representative Hardison cross-examined Pararo. Doc. 44-6 ¶ 13. In terms of documentary evidence, the Trial Committee admitted twelve joint exhibits and two of Brittain's individual exhibits, <u>see</u> Docs. 44-2 at 72–73, 78, 80–82; 44-4 at 39–40; 44-6 ¶ 15, and excluded a police report and witness

statements that provide details on a 2015 altercation between Newman and Skinner, see Docs. 44-2 at 82; 44-4 at 53; 44-3 at 115, 120–26.

A letter from Cox dated February 10, 2017 notified Brittain that the Trial Committee found him guilty as charged. Docs. 44-4 at 73; 44-2 at 75–76. The letter also stated that, as a penalty, Brittain was removed from his position as President of Local 1976, precluded from being appointed to any office within AFGE for 3.5 years, precluded from running for any office or being a delegate within AFGE for 3.5 years, and precluded from membership within AFGE for 3.5 years. Doc. 44-4 at 73. A report of the Trial Committee's decision (the "Trial Committee Report") was attached to the February 10th letter. Id. at 74–75.

In March 2017, Brittain filed an appeal, to which fifteen exhibits were attached, with the AFGE National Executive Council. Docs. 44-3 at 23–24; 44-2 at 76–77; 44-4 at 73; 44-7 ¶¶ 17–18. The National Executive Council voted unanimously to uphold the Trial Committee's findings, but reduced Brittain's bar from membership from 3.5 years to 1.5 years. Docs. 44-7 ¶ 19; 44-2 at 77. In 2018, Brittain filed a further appeal to the AFGE National Convention, but his appeal was denied. Docs. 44-2 at 77; 1 ¶ 29.

## C. Brittain's Election Protest

Brittain mailed a signed protest of the district secretary-treasurer election in which McElhaney was a candidate to Gary Harding, an election committee member; Brittain also hand-delivered a copy of the protest to AFGE

National Vice President Everett Kelly. <u>See</u> Docs. 44-2 at 60–62, 103; 44-5 ¶ 6. No one notified McElhaney of Brittain's protest in advance of the Hearing. <u>See</u> Doc. 44-5 ¶ 12.

The parties present conflicting evidence with respect to the year Brittain filed the protest and the ramifications of the protest. Brittain testified that he filed the protest in 2014 or 2015, Doc. 44-2 at 60–61, while Harding's declaration provides that Brittain filed the election protest in 2012, Doc. 44-5 ¶ 8. In addition, while Brittain testified that AFGE did not permit McElhaney to take office for three years as a result of his protest, Doc. 44-2 at 63–64, 103, McElhaney testified that she was not aware of any election protest and that she assumed the district secretary-treasurer office without delay, <u>see</u> Doc. 44-4 at 7–8, 35–36, 58–59. In agreement with McElhaney, Harding's declaration states that McElhaney took office immediately because McElhaney's opponent withdrew from the race, negating any need to redo the election. <u>See</u> Doc. 44-5 at 2, 7.

## II.   DISCUSSION[5]

Count I alleges that AFGE suspended Brittain's membership, prohibited Brittain from seeking office, and removed Brittain from office without affording

---

[5] Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment should be granted "'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" <u>Estate of Todashev by Shibly v. United States</u>, 815 F. App'x

him due process in violation of § 411(a)(5). Docs. 1 at ¶¶ 26, 31–42. Section 411(a)(5) states that:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

This provision does not protect union officers from suspension or removal as a union officer. See Dolan v. Transport Workers Union of Am., 746 F.2d 733, 740 (11th Cir. 1984) ("According to its terms, § 411(a)(5) does not . . . guarantee any protections as far as removal of a union member from his post as an officer or employee of the union.") (citing Finnegan v. Leu, 456 U.S. 431 (1982)); Adams-Lundy v. Ass'n of Prof'l Flight Attendants, 792 F.2d 1368, 1372 (5th Cir. 1986) ("Where the injury allegedly suffered by union officers is done to them in their status as officers, not as individual members, there can be no cause of action under section[] 411 . . . because there has been no infringement of the basic rights of membership protected by those sections."). However, § 411(a)(5) applies with respect to disciplinary actions barring or suspending members

_____

446, 450 (11th Cir. 2020) (citing Fed. R. Civ. P. 56(a)). Once the movant "demonstrate[s] the absence of a genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine issue for trial." Johnson v. Unique Vacations, Inc., 498 F. App'x 892, 895 (11th Cir. 2012). Courts view the evidence in the light most favorable to the non-moving party. Chavez v. Mercantil Commercebank, N.A., 701 F.3d 896, 899 (11th Cir. 2012).

from running for office. <u>Sullivan v. Laborers' Int'l Union of N.A.</u>, 707 F.2d 347, 350 (8th Cir. 1983) (holding that "while a union officer facing suspension from his position as an officer is not entitled to procedural due process under section 411(a)(5), a union member barred from seeking union office is entitled to the procedural due process protections of section 411(a)(5)"). The Eighth Circuit has reasoned that "by preventing one of its members from seeking union office, a union affects the individual as a union member, and thereby triggers the procedural protections contained in section 411(a)(5)." <u>Id.</u>; <u>see also</u> <u>Kent v. New York State Public Employees Fed'n, ALF-CIO</u>, No. 1:17-CV-0268 (GTS/CFH), 2020 WL 1531020, at *10 (N.D.N.Y. Mar. 31, 2020) ("The Hearing Board's report clearly shows that the discipline imposed on [the plaintiffs] . . . affected their membership rights by barring them from running for any union office . . . . The Court must therefore assess whether [the plaintiffs] . . . were afforded sufficient process under the LMRDA.") (internal citation omitted). Thus, there is no cognizable action for Brittain's removal from office, and the Court shall limit its analysis to Brittain's membership suspension and bar from official candidacy.[6]

---

[6] However, if the Court had undertaken a § 411(a)(5) analysis for Brittain's removal from office, the result would be the same as to his other claims.

## A.    Justiciability of Count I

AFGE argues that Count I is moot because Brittain's membership suspension has expired. (Doc. 44 at 10). The Court disagrees.

"Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restricts the authority of federal courts to resolving the legal rights of litigants in actual controversies." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71 (2013) (internal quotation marks omitted). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (internal quotation marks omitted). "Thus, a case becomes moot when the reviewing court can no longer offer any effective relief to the claimant." Gagliardi v. TJCV Land Trust, 889 F.3d 728, 733 (11th Cir. 2018); see also Chafin v. Chafin, 568 U.S. 165, 172 (2013) ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.") (internal quotation marks omitted).

Brittain alleges that he has "suffered damages which are of a continuing nature." (Doc. 1 at ¶ 49). Brittain elaborated in his response to AFGE's motion to dismiss that "suspension from both his office and from membership in AFGE caused him substantial damages to income and more importantly to his

reputation within the AFGE organization where he had always been a well-known and respected member for nearly 20 years." Doc. 31 at 3–4. Furthermore, the Third Circuit has explained that "expulsion from * * * (a union) or suspension for a period of time * * * may well be, and often is in fact, a more severe sanction than a monetary fine or a relatively brief confinement imposed by a court in a criminal proceedings." Falcone v. Dantinne, 420 F.2d 1157, 1164 (3d Cir. 1969). For instance, "many unions have initiated retirement and medical plans[, and] expulsion from the union would result in the loss of these valuable benefits. Thus, to the typical union member the maintenance of his membership is of paramount importance." Id. at 1163. In sum, suspension from union membership can cause injury, and the expiration of the suspension term alone may not render such injury moot. Here, the Court can provide various forms of relief, such as clearing the conviction from Brittain's record and ensuring that Brittain can rejoin the union in good standing. Count I is not moot.

## B.    Due Process Under the LMRDA

"Under § 411(a)(5), a union member must receive the following procedural safeguards before discipline is imposed: (1) written specific charges; (2) a reasonable time to prepare a defense; and (3) a full and fair hearing."

<u>Batorsky v. Sheedy</u>, 13 F. Supp. 2d 287, 293 (N.D.N.Y. 1998).[7] However, "[t]he LMRDA does not allow the recovery of damages for a union's violation of a technical internal rule that does not adversely affect a member's due process rights." <u>Wellman v. Int'l Union of Operating Eng'rs</u>, 812 F.2d 1204, 1206 (9th Cir. 1987); <u>see also</u> <u>United States v. Int'l Bhd. of Teamsters</u>, 247 F.3d 370, 387 (2d. Cir. 2001).

      1.  <u>Brittain received written specific charges.</u>

"[P]resentation of (a) the nature of the charges and (b) a statement of the factual basis underlying the charges is sufficient to meet the requirement for a specific written charge." <u>Kent</u>, 2020 WL 1531020 at *11; <u>see also</u> <u>Int'l Bhd. of Boilermakers v. Hardeman</u>, 401 U.S. 233, 245 (1971). A charging letter should "contain a description of the nature of the offense, the circumstances surrounding the alleged infraction, and as nearly as may reasonably be ascertained, the time and place of the occurrence." <u>Batorsky</u>, 13 F. Supp. 2d at 293 (internal quotation marks omitted); <u>see also</u> <u>Keenan v. Int'l</u> <u>Ass'n of Machinists & Aerospace Workers</u>, 937 F. Supp. 2d 93, 113 (D. Me. 2013) ("[T]he amount of factual detail required of a charging document necessarily fluctuates based on the particulars of the case."); <u>Caterina v. Int'l Bhd. of Painters & Allied</u>

---

[7] Throughout this Order, the Court cites non-precedential, yet persuasive opinions as the Eleventh Circuit has not had the opportunity to extensively develop case law on § 411(a)(5).

Trades, Local Union No. 30, No. CV477-233, 1978 WL 1671, at *12 (S.D. Ga. Jul. 21, 1978) ("'[T]he requirement of 'specific charges' is not satisfied by reference in the [charging letter] to a section of a union constitution without any statement of the factual basis of the charge.'") (quoting Magelssen v. Local Union No. 518, Operative Plasterers' & Cement Masons' Int'l Ass'n, 233 F. Supp. 459 (W.D. Mo. 1964)). Nevertheless, unions need not provide a highly technical statement of facts in charging letters. Johnson v. Nat'l Ass'n of Letter Carriers Branch 1100, 182 F.3d 1071, 1074 (9th Cir. 1999). "[A]n informal written statement of facts suffices." Id. at 1074–75 (internal citations omitted). "'[T]he goal is to give the accused member notice of the conduct that he . . . is expected to defend.'" Chao v. Local 1357, Int'l Broth. of Elec. Workers, AFL-CIO, 232 F. Supp. 2d 1119, 1128–29 (D. Hawai'i 2002) (quoting Johnson, 182 F.3d at 1074 n.5) (alterations in original); id. ("'[T]he charge does not need to allege facts sufficient to support the charge or the particular elements of the charge.'") (alterations in original).

Here, National President Cox mailed Brittain a charging letter that describes Brittain's offenses as representing Skinner in her EEO Complaint, which "create[d] a conflict of interest with respect to [his] duties as a local president and representative of a bargaining unit," "lodg[ing] accusations about a bargaining unit employee with management in an email dated . . . June 17, 2016," and causing or allowing Local 1976 to accept dues from Skinner although

Skinner was employed by a facility that fell outside of Local 1976's jurisdiction. Doc. 47-2. The letter explains that, based on this conduct, AFGE was charging Brittain under several sections of Article XXIII of the National Constitution:

> 2(d) (making known the business of any affiliate of the Federation to management officials of any agency or other persons not entitled to such knowledge), (e) (engaging in conduct unbecoming of a union member), (f) (engaging in gross neglect of duty or conduct constituting misfeasance or malfeasance in office as an officer or representative of a local), and (g) (incompetence, negligence, or insubordination in the performance of official duties by officers or representatives of a local or council or failure or refusal to perform duties validly assigned).

Id.

Brittain advances that the letter is contradictory because it states that his representation of Skinner was a conflict of interest while also indicating that he "may have [had a] right to represent [her] . . . in her . . . EEO case." Id.; see also Doc. 47-1 ¶ 8 ("[AFGE]'s advisory letter to me of July 22, 2016 (the 'advisory letter') from David Cox, former national president of Defendant, advised me that I in fact had the right to represent Glenda Skinner, the very conduct I was being accused of."); Doc. 47 at 13–14. While the letter could have been clearer, it is not contradictory. An individual exercising a private right to engage in activity that is incompatible with their professional responsibilities or duties is a classic example of a conflict of interest. See Conflict of Interest, MERRIAM-WEBSTER DICTIONARY ONLINE (defining "conflict of interest" as "a conflict between the private interests and the official responsibilities of a person

in a position of trust."); <u>Conflict of Interest</u>, BLACK'S LAW DICTIONARY 363 (10th ed. 2014) (defining "conflict of interest" as "a real or seeming in compatibility between one's private interests and one's public or fiduciary duties."). Thus, the charging letter's statement that Brittain may have had a right to represent Skinner does not detract from or obfuscate the charge that Brittain's representation of Skinner was incompatible with his duties as President of Local 1976.

Brittain also contends that the letter does not make clear "what act or acts constituted 'conduct unbecoming', 'gross negligence', misfeasance, malfeasance, incompetence, insubordination or what duty he had failed or refused to perform." Doc. 47 at 5–6, 14. While it may be preferable that charging letters separately link each chargeable offense to specific factual allegations, such a high level of specificity is not required under the LMRDA. <u>See</u> <u>Chao</u>, 232 F. Supp. 2d at 1128–29 ("'[T]he charge does not need to allege facts sufficient to support the charge or the particular elements of the charge.'") (quoting <u>Johnson</u>, 182 F.3d at 1074 n.5) (alterations in original). Charging letters must put the charged individual on notice of the conduct they are expected to defend in their disciplinary proceeding. Brittain's charging letter specifies three instances of alleged misconduct with sufficient particularity. <u>See</u> <u>Kent</u>, 2020 WL 1531020 at *11–*13 (concluding that a charging letter that did not separate out charges to specific individuals satisfied the LMRDA's written specific charges

17

requirement). Therefore, Brittain received written specific charges in accordance with § 411(a)(5).

2. <u>Brittain received reasonable notice of the hearing, thus providing him adequate time to prepare a defense.</u>

"Section 411(a)(5)(B) does not specify the amount of time that is necessary to comply with the 'adequate time' requirement. Courts generally decide whether a requirement such as this has been satisfied 'with due regard to the practicalities and peculiarities of the case.'" <u>Martin v. Local 556, Transp. Workers Union of Am., AFL-CIO</u>, 2014 WL 4358480, at *8 (N.D. Tex. Sept. 3, 2014). In other words, "[t]he question whether a union member has been given timely or adequate notice is fact-specific." <u>Meader v. District Lodge No. 4, Indus. Union of Marine & Shipbuilding Workers of Am., AFL-CIO</u>, 786 F. Supp. 95, 104–05 (D. Me. 1992).

Article XXIII of the National Constitution stipulates that a disciplinary hearing "shall not be held less than two weeks after the mailing of the notice [of hearing]." Doc. 44-7 at 3, 36. Brittain's notice of hearing is dated December 22, 2016 and the hearing was set for and took place on January 10, 2017. Doc. 44-3 at 65–66. It is important to consider that Brittain may have not been able to prepare on Christmas Eve, Christmas, New Year's Eve, and New Year's Day when many businesses were closed. Discounting those four days leaves fifteen days between the mailing of the notice and the Hearing. Thus, AFGE provided

Brittain notice in accordance with the National Constitution. The record also supports that AFGE provided Brittain reasonable time to prepare a defense in compliance with Section 411(a)(5)(B). In making this determination, the Court considers that Brittain did not request additional time to prepare his defense and fully participated in the Hearing with his representative.

3. <u>AFGE provided Brittain a full and fair hearing.</u>

"The 'full and fair hearing' requirement of the LMRDA incorporates the 'traditional concepts of due process.' Not all of the due process protections available in the federal courts apply to union disciplinary proceedings. Such proceedings need only adhere to the 'basic principles of due process.'" <u>Teamsters</u>, 247 F.3d at 385 (internal citations omitted); <u>see also</u> <u>Dolan</u>, 746 F.2d at 740 ("The procedural protections that must be accorded under § 411(a)(5) before a union member may be disciplined flow from the specifics of the provisions, and not from the panopoly[sic] of protections that the federal Constitution gives criminal defendants.") (internal citation omitted). "These include the right to produce evidence, the opportunity to confront [witnesses] and rebut evidence, and an unbiased tribunal." <u>Kent</u>, 2020 WL 1531020 at *14; <u>see also</u> <u>Rowan v. Laborers Int'l Union of N.A.</u>, No. 10-CV-3855(DRH)(ETB), 2012 WL 3203046, at *6 (E.D.N.Y Aug. 3, 2012). Nonetheless, "the burden of proof is low; the charging party must provide only 'some evidence' at the disciplinary hearing to support the charges." <u>Piacente v. Int'l Union of</u>

Bricklayers & Allied Craftworkers, No. 11 Civ. 1458(ER), 2015 WL 5730095, at *10 (S.D.N.Y. Sept. 30, 2015) (citation omitted); see also Daniels v. National Alliance of Postal & Fed. Employees, No. Civ.A. 83-1444, 1985 WL 6408, at *4 (D.D.C. Oct. 4, 1985) ("[C]onviction by a union on charges unsupported by any evidence constitutes a violation of the due process guarantees of section 411(a)(5) . . . . No requirement exists, however, that a conviction be supported by 'substantial evidence.'") (citing Hardeman, 401 U.S. at 246). The Court commences the full and fair hearing analysis with the most contentious issue: the impartiality of the Trial Committee.

### a. McElhaney was not biased and did not taint the Trial Committee.

Even where a conviction is based on "some evidence," courts may examine bias in determining the fairness of disciplinary proceedings.[8] See Conway v. Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers, 209 F. Supp. 2d 731, 747 (N.D. OH. 2002) ("[T]he 'some evidence' standard does not preclude courts from examining a disciplinary hearing for bias or prejudice or considering 'a challenge to the essential fairness of and motivation for the proceedings.'"); see

---

[8] "The failure to raise the issue of bias on the part of the tribunal at a union disciplinary hearing . . . does not preclude the issue from being raised in a court proceeding under the LMRDA." Goodman v. Laborers' Int'l Union of N.A., 742 F.2d 780, 783 (3d Cir. 1984); see also Falcone, 420 F.2d at 1162 ("[S]ince an element of a full and fair hearing is that the Trial Body be impartial, the duty of disqualification because of prejudgment or bias would seem to rest, at least in part, with the members of the Trial Body.").

also <u>Perry v. Int'l Longshoremen's Ass'n, AFL-CIO</u>, 638 F. Supp. 1441, 1447–48 (S.D.N.Y. 1986) ("[W]hile <u>Hardeman</u> stands for the proposition that courts reviewing union disciplinary proceedings should not determine the scope of offenses for which a union may discipline its members, it does not preclude this court from examining the proceeding for bias or prejudice . . . .") (internal citation omitted). An impartial decisionmaker is an essential element of a fair hearing. <u>Goodman v. Laborers' Int'l Union of N.A.</u>, 742 F.2d 780, 783 (3d Cir. 1984); <u>see also Mayle v. Laborer's Int'l Union of N.A., Local 1015</u>, 866 F.2d 144, 146 (6th Cir. 1988) ("[E]vidence of a partial trial board is violative of the LMRDA.").

To prevail on a claim that a trial committee is biased, the plaintiff "must make specific factual allegations of bias that show that the [committee was] incapable of hearing [the] plaintiff['s] case impartially." <u>Yager v. Carey</u>, 910 F. Supp. 704, 715 (D.D.C. 1995); <u>see, e.g.</u>, <u>Perry</u>, 638 F. Supp. at 1450 (denying the union's motion for summary judgment where two of the individuals who ruled in favor of convicting the charged union member were political opponents of the charged union member and hoped to expel him for political and financial gain); <u>Knight v. Int'l Longshoremen's Ass'n</u>, 457 F.3d 331, 343 (3d Cir. 2006) (finding evidence of bias where a member of the trial committee expressed in a letter that he had antipathy towards a union faction to which the charged union member belonged and testified at trial that his negative impressions of the

faction affected his decision-making process). However, a plaintiff is not required to show "actual bias" where the circumstances of disciplinary proceedings present a significant risk of actual bias. <u>Holschen v. Int'l Union of Painters & Allied Trade/Painters Dist. Council #2</u>, 598 F.3d 454, 461–62 (8th Cir. 2010) (discussing <u>Wildberger v. Am. Fed'n of Gov't Employees, AFL-CIO</u>, 86 F.3d 1188, 1196 (D.D.C. 1996)). To violate § 411(a)(5) only one member of a trial committee need be biased. <u>See</u> <u>Yager</u>, 910 F. Supp. at 715; <u>Knight</u>, 457 F.3d at 343 ("The prejudgment by a single decisionmaker in a tribunal of limited size [here a committee of three] is sufficient to taint the proceedings and constitute a denial of the right to a full and fair hearing under the LMRDA.") (quoting <u>Goodman</u>, 742 F.2d at 783) (internal quotation marks omitted). Finally, "a complete <u>de novo</u> review [by an internal union appellate body] may cure the defect of a biased tribunal in an earlier proceeding." <u>Goodman</u>, 742 F.2d at 784.

Brittain alleges that Trial Committee member McElhaney was biased and that he was therefore judged by a tainted tribunal in violation of the LMRDA. <u>See</u> Docs. 1 ¶¶ 33, 48; 47 at 7, 11, 17–18. Brittain represents that McElhaney was biased because, at least two years before the Hearing, Brittain filed an election protest that prevented McElhaney from taking office for at

least a year.[9] See Docs. 1 ¶¶ 23, 33; 44-2 at 59, 64, 103, 109; 44-5 ¶ 8. AFGE counters that McElhaney was not biased because she did not know Brittain filed a protest until after the Trial Committee rendered a decision on the charges, and supports its argument with evidence. Doc. 44 at 18–19. McElhaney testified that she did not know that anyone filed a protest, see Doc. 44-4 at 7–8, 59, and Harding's declaration states that he did not notify McElhaney of a protest, see Doc. 44-5 ¶ 12. Meanwhile, Brittian merely speculates that McElhaney knew of his protest because his name was on the protest document. See Docs. 44-2 at 109–10; 44-3 at 58. This is not sufficient to rebut AFGE's evidence. See Cordoba v. Dillard's Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) ("'[U]nsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'") (quoting Hedberg v. Ind. Bell. Tel. Co., 47 F.3d 928, 931–32 (7th Cir. 1995)) (emphasis in original). Therefore, Brittain's bias claim fails. Compare Goodman, 742 F.2d at 784 (reasoning that there was sufficient evidence of partiality where multiple members of the trial committee had been previously fired from union positions by the charged union member), with Kent,

---

[9] Brittain testified that McElhaney was kept out of office for three years. Doc. 44-2 at 64, 103. In contrast, his Complaint states that McElhaney was prevented from assuming office for one year. Doc. 1 ¶ 23.

2020 WL 1531020 at *16 ("Plaintiffs' various evidence that they had past disagreements with, negative interactions with, and/or a history of differing political views with some members of the Hearing Panel does not alone suffice to establish that those members were biased against Plaintiffs.").

In his Response, Brittain attempts to introduce a new bias theory. Brittain asserts that in his disciplinary proceeding there was a substantial risk of bias because President Cox, who filed the charges and selected the Trial Committee members, was biased given his close relationship with Newman. See Doc. 47 at 14–18. Brittain does not allege in his complaint that Cox was biased or that Cox and Newman had a relationship; the complaint focuses on McElhaney's alleged partiality. Doc. 1 ¶ 23. Brittain's new bias theory is thus a new claim.

"At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004); see also Cook v. CSX Transp., Inc., No. 6:06-cv-1193-Orl-19KRS, 2008 WL 2064549, at *2 (M.D. Fla. May 13, 2008) ("[A]n allegation or argument may be a new 'claim' without also constituting an independent cause of action."). Thus, Brittain has improperly raised the issue of Cox's partiality, and this new theory of bias will not be considered. See San

<u>Francisco Residence Club, Inc. v. Baswell-Guthrie</u>, 897 F. Supp. 2d 1122, 1204

(N.D. Ala. 2012) (finding that the plaintiffs were barred from raising a new

theory or argument at the motion for summary judgment stage).

> ***b.   AFGE generally complied with AFGE's procedures and rules in carrying out Brittain's disciplinary process.***

Brittain alleges that AFGE used illegitimate procedures in his

disciplinary proceeding, which violated his due process rights. Doc. 1 ¶¶ 43–48.

In particular, Brittain contends AFGE violated the National Constitution

because Cox appointed all of the Trial Committee members and Brittain was

not tried by members of Local 1976. <u>Id.</u>

Brittain is mistaken. Under Article IX, Section 5(d) of the National

Constitution:

> The National President shall be authorized to suspend immediately an officer . . . for serious misconduct, including but not limited to . . . negligence . . . , or any other offenses, as described in Article XXIII, Section 2, where in his or her judgment the continuance in office of such officer would be inimical to the best interests of the Federation and its members. At the time of the suspension, the National President shall serve upon the suspended officer by registered or certified mail a written notice of the suspension stating in detail the charges against the officer . . . Such suspended local officer shall be tried by his or her local under the procedures established in XXIII. <u>However, the National President, when he or she deems it in the best interest of the Federation, or in his or her opinion the local will not proceed promptly to trial, or cannot be expected to fairly or judiciously try the matter, may . . . appoint a trial committee . . . for the trial of the suspended officer.</u> . . . A suspended local officer shall be tired by a trial committee

composed of at least three members or employees of the Federation appointed by the National President . . . .

Doc. 44-7 at 18–19 (emphasis added). Cox adhered to these procedures in suspending Brittain from his roles as president and as a national convention delegate. Brittain received written notices of his suspensions and a letter specifying the charges preferred against him via certified mail, and a trial committee of three AFGE members appointed by Cox tried his case. See Docs. 44-2 at 45–48, 161–62; 44-6 at 15.

Brittain invites the Court to second guess Cox's determination that it was in the best interest of AFGE for Cox to appoint the Trial Committee, but the Court declines. [10] Even if the procedures used in Brittain's disciplinary proceeding did not fully comport with the National Constitution, "a violation of an internal union constitution during the course of a disciplinary proceeding is a violation of the LMRDA only if it deprives the Union member of the full and fair hearing contemplated by [the LMRDA]." Keenan, 937 F. Supp. 2d at 111 (internal quotation marks omitted); see also DeCarlo v. Salamone, 977 F. Supp. 617, 625 (W.D.N.Y. 1997) ("Even where a union fails to follow its own procedural rules, there is no LMRDA violation unless the shortcoming also 'contravenes

---

[10] Neither Cox nor AFGE have explicitly stated why using the selected trial procedure was in the "best interest of AFGE." See Doc. 47-1 ¶ 13. Although not required per se, it is preferred that AFGE convey a basis for such findings to charged union members.

specific prohibitions in the LMRDA.'") (quoting <u>Wellman</u>, 812 F.2d at 1206).

Here, Brittain has not sufficiently shown that any deviation from the National

Constitution denied him due process. <u>See</u> <u>Wildberger</u>, 86 F.3d at 1195 ("We see

nothing inherently wrong with the union constitution authorizing the [union

president] to determine probable cause, prefer the charge, appoint a trial

committee, and then make the ultimate decision based on the committee's

recommendations."); <u>Wellman</u>, 812 F.2d at 1206 ("[The plaintiff] does not argue

that the membership meeting was a biased tribunal, but merely contends it was

the wrong type of membership meeting. The fact that Wellman was tried at one

type of membership meeting instead of another did not deprive him of a fair

hearing."); <u>DeCarlo</u>, 977 F. Supp. at 625 ("[The plaintiff's] claims that the

hearing was marked by procedural shortcomings cannot sustain a claim for

damages under the LMRDA unless the shortcomings also impacted identifiable

rights under [the LMRDA].").

### c. *Brittain introduced witnesses and documentary evidence at the Hearing.*

The LMRDA guarantees union members an opportunity to present

evidence in internal union disciplinary proceedings and to call to their defense

anyone who would willingly testify. <u>See</u> <u>Yager</u>, 910 F. Supp. at 715; <u>Keenan</u>,

937 F. Supp. 2d at 118. Trial committees are not required to compel the

appearance of individuals who do not wish to testify. <u>See</u> <u>Keenan</u>, 937 F. Supp. 2d at 118.

Although AFGE's representative/prosecutor objected to most of the witnesses and documents that Brittain tried to introduce, Brittain was able to call some witnesses and introduce some documentary evidence. <u>See</u> Doc 44-2 at 66. Brittain was permitted to call Robert Van Slyke, Docs. 44-2 at 66; 44-6 at ¶14, Brittain testified, Docs. 44-2 at 66; 44-2 at 75; 44-6 at ¶14; 44-4 at 45, and the Trial Committee admitted twelve joint exhibits and two of Brittain's individual exhibits, Docs. 44-2 at 72, 78, 80–82; 44-4 at 39–40; 44-6 ¶ 15. Even so, Brittain contends that AFGE did not satisfy the LMRDA's full and fair hearing requirements. <u>See</u> Doc. 1 ¶¶ 34, 40.

Brittain alleges that the Trial Committee improperly prohibited Skinner and Devlin from testifying on his behalf, <u>see</u> Doc. 1 ¶¶ 34–36, and improperly prohibited him from introducing the police report and witness statements, Docs. 1 ¶¶ 34, 37, 39; 44-2 at 82 ("[M]ost of the documents that we had involved police reports of various natures, and none of that that was allowed in . . . ."). AFGE counters that all evidence excluded by the Trial Committee was irrelevant to the charges against Brittain. Doc. 44 at 24. The Court largely agrees with AFGE.

The Trial Committee reasonably excluded Skinner's testimony because management employees are not typically permitted to participate in internal

union proceedings, see Docs. 44 at 23; 44-6 ¶¶ 18–19; 44-4 at 54; 44-2 at 66, 82, and much of Skinner's testimony would have been duplicative of Brittain's testimony, see Docs. 44 at 24. There were also reasonable grounds for excluding the police report and witness statements. The documents were related to Skinner's planned testimony and the Trial Committee did not permit Skinner to testify. See Doc. 44-2 at 72, 81–82; 44-3 at 89. In addition, the police report offered no information capable of rebutting the charges against Brittain. See Doc. 44-4 at 53.

According to Brittain, Devlin would have testified that Newman was hostile towards Brittain and that it was permissible for Skinner to pay dues to Local 1976. Doc. 44-2 at 66–67, 69–72. The alleged hostility between Brittain and Newman is irrelevant. While Devlin's planned testimony on the dues issue is relevant to the charges, the Trial Committee's exclusion of this testimony ultimately does not alter the outcome of the Court's due process analysis.[11] AFGE Local 1976's Constitution stipulates that only individuals "within the local jurisdiction . . . shall be eligible for membership." Doc. 44-6 at 59; see also Docs. 44-4 at 34; 44-2 at 15–16. Skinner was not employed within the

---

[11] The Court considers that Brittain has not expressly argued in his pleadings that the Trial Committee's exclusion of Devlin's testimony on supervisor dues payments resulted in a denial of due process. The contention that Devlin would have provided information on dues payments is only found in Brittain's deposition. See Doc. 44-2 at 70–71. Brittain did not incorporate or reference this testimony in his pleadings.

jurisdiction of Local 1976, and therefore she did not qualify for membership. See Docs. 44-2 at 23; 44 at 34. Because she was not a member, she did not owe dues to Local 1976. Devlin's testimony would have done little to rebut these facts. To the extent the rules governing membership and dues payments are ambiguous, the Court is to provide deference to AFGE's interpretation of its rules. See Most v. Am. Fed'n of Musicians of U.S. & Canada, 7 F. App'x 551, 552–53 (9th Cir. 2001) ("Although [the plaintiff] disputes the unions' interpretation of the rules that he was found to have violated, we are not inclined to upset a union's interpretation of its own bylaws."); see also Georgopoulos v. Int'l Bhd. of Teamsters, AFL-CIO, 942 F. Supp. 883, 895 (S.D.N.Y. 1996) (citing Hardeman, 401 U.S. at 244–45) ("[A] union's reasonable interpretation of the scope of offenses for which it may discipline its members is entitled to deference.").

Separately, Brittain raises for the first time in his Response that his inability to call[12] Devlin[13] and Skinner denied him the opportunity to examine

---

[12] Calling a witness and cross-examining a witness are distinct acts. Thus, the Court interprets Brittain's allegations in his Response that he was unable to call Cox and Newman to mean that he was unable to present them as part of his defense. The Court does not interpret this language to mean that Brittain was unable to cross-examine the witnesses.

[13] In his complaint, Brittain argues that the exclusion of Devlin's testimony resulted in a denial of due process only because Devlin would have provided information on Newman's hostility towards Brittain. Doc. 1 ¶ 36.

Cox's bias and, in turn, the partiality of the Trial Committee appointed by Cox. See Doc. 47 at 18–19. Brittain also contends for the first time in his Response that the Trial Committee did not allow him to call Cox[14] and Newman as witnesses, and that this too prevented him from exploring Cox's bias. See id.; Doc. 47-1¶ 26. The Court will not consider these new allegations as they are directly related to and stem from Brittain's improperly raised bias theory regarding Cox's relationship with Newman and Cox's alleged partiality. See supra Part II.B.3.a; Doc. 50 at 6–7.

Brittain does not argue that Cox would have otherwise been a pertinent witness. As AFGE asserts with respect to Cox, LMRDA does not provide union members a right to call an individual as a witness simply because the individual filed the charges at issue. See Yager, 910 F. Supp. at 717 ("[P]laintiffs do not necessarily have a right to question the person who filed the charges."); Doc. 44 at 21–22. Moreover, Penas' declaration states that AFGE called Newman as a witness. Doc. 44-6 ¶ 13. Brittain has offered no evidence to rebut this, and Brittain does not allege that he was unable to cross-examine Newman.

In total, the Trial Committee provided Brittain a sufficient opportunity to present pertinent evidence and witnesses at the Hearing.

---

[14] McElhaney testified and Penas states in his declaration that neither AFGE nor Brittain attempted to call Cox. See Docs. 44-6 ¶ 16; 44-4 at 43; see also Doc. 44-2 at 52–53. Again, a transcript would be helpful.

#### d. The Trial Committee permitted Brittain to cross-examine pertinent witnesses.

Union members facing disciplinary charges "have a right implicit in the full and fair hearing provision of the LMRDA to . . . cross-examine <u>pertinent</u> witnesses." <u>Yager</u>, 910 F. Supp. at 717 (emphasis in original); <u>see also</u> <u>Ritz v. O'Donnell</u>, 566 F.2d 731, 735 (D.C. Cir. 1977) ("The courts have uniformly recognized that the right of confrontation and cross-examination of witnesses is fundamental to the 'full and fair hearing' requirement[.]"). Brittain's representative, Hardison, was able to cross-examine a least some of AFGE's witnesses, despite AFGE objecting to many of his questions. <u>See</u> Doc. 44-2 at 75. For example, Hardison cross-examined Mary Pararo. Doc. 44-6 ¶ 13.

Brittain, nevertheless, contends that he was denied a full and fair hearing because he was unable to cross-examine Cox. Doc. 1 ¶ 38. AFGE did not call Cox to testify, <u>see</u> Docs. 44-4 at 43–44, 53–54; 44-3 at 89; 44-6 ¶ 16, so it follows that Brittain did not have an opportunity to cross-examine Cox. Brittain's claim that he was unduly denied the opportunity to cross-examine witnesses is without basis. <u>See</u> <u>Keenan</u>, 937 F. Supp. 2d at 117 (concluding that the plaintiff "was provided due process: he confronted every witness presented against him and could call to his defense anyone who would willingly testify"); <u>see also</u> <u>Yager</u>, 910 F. Supp. at 717.

### e. *Brittain's conviction was supported by evidence.*

"As the Supreme Court has made clear, a full and fair disciplinary hearing under the LMRDA requires 'the charging party to provide [only] some evidence at the disciplinary hearing to support the charges made.'" Georgopoulos, 942 F. Supp. at 895 (quoting Hardeman, 401 U.S. at 234); see, e.g., Kent, 2020 WL 1531020 at *14 ("The Hearing Panel supported its findings with a 15-page recitation of testimony and evidence received at the hearing along with the Hearing Panel's discussion and assessment of that evidence, all of which shows how it arrived at its conclusions."); see also Babler v. Futhey, 618 F.3d 514, 520 n.4 (6th Cir. 2010). Here, AFGE produced both witnesses and documentary evidence at the Hearing that substantiated the charges against Brittain. See Doc. 44-6 ¶¶ 13, 20. Newman testified that Brittain represented Skinner in an EEO Complaint containing allegations against Newman, id. ¶ 20, AFGE introduced copies of the June 17 email in which Brittain reported Krol to hospital management, Doc. 44-2 at 160, Brittain admitted to representing Skinner in the EEO complaint and sending the June 17th email to management, and Brittain did not (and does not) deny that Skinner paid membership dues to Local 1976, see Docs. 44-6 ¶ 21; 44-2 at 46. Furthermore, the Trial Committee listened to Hearing testimony and weighed Brittain and AFGE's arguments and evidence in coming to a unanimous decision that Brittain was guilty as charged. Docs. 44-6 at 3–5, 44-4 at 37. Thus, no

reasonable factfinder could conclude that the Trial Committee's decision was not supported by "some evidence" (The Trial Committee's written findings were bare-bones but sufficient).

To the extent that Brittain takes issue with the scope of the offenses for which he was charged and convicted, see Doc. 47 at 19–20, AFGE's reasonable interpretation of the scope of offenses for which it may discipline its members is given deference. See Georgopoulos, 942 F. Supp. at 895 (citing Hardeman, 401 U.S. 223, 244–45); see also Most, 7 F. App'x at 552–53 ("Although [the plaintiff] points to evidentiary conflicts, the referee's resolution of these conflicts is entitled to deference.").

## III.   CONCLUSION

Brittain's disciplinary proceedings were far from perfect, and AFGE's procedures, as employed, cannot be considered best practice. Nevertheless, viewing the record in the light most favorable to Brittain, Brittain received the due process he was entitled to under § 411(a)(1)(5). See Wellman, 812 F.2d at 1205 ("While we apply traditional due process concepts, we recognize that a union has a significant interest in controlling internal discipline, and so do not require the union's disciplinary proceeding to incorporate the same protections found in criminal proceedings."). Brittain received a letter that adequately specified the charges preferred against him. AFGE mailed Brittain a notice of hearing fifteen days before the hearing date, providing him adequate time to

prepare a defense. Brittain was present at the Hearing during which his representative presented witnesses and evidence and cross-examined at least one AFGE witness. At the Hearing, AFGE presented sufficient evidence to support the imposition of discipline.

Accordingly, it is hereby

**ORDERED**:

1.    Defendant American Federation of Government Employees, AFL-CIO's Motion for Summary Judgment (Doc. 44) is **GRANTED** as to Plaintiff Frederick L. Brittain's 29 U.S.C. § 411 claim (Count I).

2.    The Clerk shall terminate all deadlines and close the case file.

**DONE AND ORDERED** in Jacksonville, Florida this 7th day of June, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

tn
Copies:
Counsel of record